IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SERVICENOW, INC., <br><br>            Plaintiff, <br>   v. <br><br> STONEBRANCH, INC., <br><br>            Defendant. <br> _____/ | Case No. C 13-4243 RS <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

The subject of this copyright infringement action is certain computer software produced by plaintiff ServiceNow, Inc. known as "Glide." ServiceNow describes Glide as "uniquely user-friendly architecture that allows users with little or no computer programming training to develop their own applications." ServiceNow previously licensed copies of Glide to Opswise Software, a California-based company. Through a two-step merger process, Opswise was dissolved and its assets and operations eventually became part of defendant Stonebranch, Inc., which undisputedly uses elements of Glide in its own software and services products, still known as "the Opswise Automation Center."

Stonebridge contends it is not subject to personal jurisdiction in this forum and moves to dismiss on that basis. ServiceNow seeks a preliminary injunction against Stonebridge's continued use of Glide.

Stonebridge obtained the software in dispute by acquiring Opswise, a California-based company, and even relies on the Opswise license as a defense to infringement, a license agreement originally formed between California entities and expressly governed by California law. These circumstances are sufficient to support jurisdiction over Stonebridge in California. The motion to dismiss will therefore be denied.

The motion for a preliminary injunction presents a somewhat closer call. Stonebridge admits it is using Glide, and, for purposes of this motion, does not contest copyrightability. Its arguments that it has a license, express or implied, and/or that Opswise has waived its infringement claims, are less than compelling. Those contentions, however, present at least some factual uncertainty weighing against the grant of a preliminary injunction. Additionally, while ServiceNow may have the right in the abstract to block any use of its software, the question arises as to its ability to withhold consent to assignment of the Opswise license to Stonebridge under the circumstances here.

Of greater import on the question of irreparable harm is ServiceNow's failure to act more promptly, coupled with the absence of an adequate evidentiary showing as to the likelihood of the claimed harms. Combined with other facts suggesting that the injury to ServiceNow lies in not receiving royalties, as opposed to being injured by the mere use of Glide, monetary damages likely will be sufficient even if liability is proven. Accordingly, the motion for a preliminary injunction must also be denied.

## II.  BACKGROUND

ServiceNow describes itself as "a leading provider of information technology service management software that allows customers to lower their operational costs and enhance efficiency." It offers a suite of applications based on its Glide platform. As noted above, that platform is designed to allow users with little or no computer programming training to develop their

own applications. As also noted above, ServiceNow has registered copyrights in the software, the validity of which Stonebridge does not challenge, for purposes of these motions.

ServiceNow originally licensed its Glide software to JME Software, LLC, for development of a specific product line of software applications. In 2008, ServiceNow consented to the partial assignment of that license to Opswise in connection with Opswise's asset purchase of that product line. That agreement provided that Opswise would be bound by the same duties, liabilities, and obligations specified in the original license.

In January of 2011, defendant Stonebranch's parent holding company (SB Holdings International, Inc.) created a wholly-owned merger subsidiary (Opswise Acquisition Company) to merge with Opswise and be the post-merger surviving entity. In December of that year, in what Stonebranch characterizes as a "separate transaction," Opswise Acquisition Company was merged into Stonebranch.

Based on these facts, ServiceNow contends "Stonebranch devised a corporate transaction in 2011 to gain access to ServiceNow's software—without ever compensating ServiceNow—while extinguishing Opswise's separate corporate existence." In addition to denying any wrongful intent, Stonebranch argues that it was not even a party to the merger that ended Opswise's existence as a California entity, and that the merger it later effected in December was with a fellow Georgia-based company.[1]

The parties dispute the extent to which they are competitors. ServiceNow insists that Stonebranch's products compete with some of ServiceNow's offerings, and Stonebranch's distribution of unauthorized versions of the Glide platform undercuts ServiceNow's efforts to sell its own software.

---

[1] At the hearing, counsel acknowledged that there is nothing in the record to show that the ultimate merger in December was not contemplated from the outset of the acquisition process.

## III. LEGAL STANDARDS

### A. Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction are authorized by Rule 12(b)(2) of the Federal Rules of Civil Procedure. Personal jurisdiction over a nonresident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1946). Fairness requires that a court exercise jurisdiction only if the defendant's actions in connection with the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute permits the "exercise of jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. P. Code § 410.10.

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam). However, the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion to dismiss. *See id.*; *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Such a showing requires only that a plaintiff present facts which, if true, establish jurisdiction. *See Unocal*, 248 F.3d at 922. "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true," and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

4

B. Preliminary Injunction

A preliminary injunction order is an "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To win a preliminary injunction, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In any case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). Courts are "not mechanically obligated to grant an injunction for every violation of law," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982), and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citing *Weinberger*, 456 U.S. at 313).

IV. DISCUSSION

A. Jurisdiction

ServiceNow primarily contends that the exercise of *specific* jurisdiction over Stonebridge is appropriate in this action.[2] The Ninth Circuit employs "a three-part test to determine whether the district court may exercise specific jurisdiction over a nonresident defendant" -- that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme*,

---

[2] Almost in passing at the end of its brief, ServiceNow suggests that general jurisdiction *might* be available, based on Stonebridge allegedly having an "interactive website" and having made other marketing efforts in this state. ServiceNow "reserves the right" to make a more "fulsome" argument for general jurisdiction in the event jurisdictional discovery is allowed and uncovers facts that would support such an argument.

433 F.3d 1199, 1205 (9th Cir. 2006). The first step is to determine whether the nonresident defendant has done "some act or consummate[d] some transaction with the forum[,] or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections" thereof. *Id.* (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).[3] The purposeful availment requirement is designed to ensure that a defendant is not subjected to suit in a jurisdiction through random, fortuitous, or attenuated contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The second step asks whether "the claim [is] one which arises out of or results from the defendant's forum-related activities." *Id.* The final inquiry is to determine if the exercise of jurisdiction is reasonable. *Id.* Once it is established that defendants purposefully availed themselves of the benefits and protections of the forum, the forum's exercise of jurisdiction is "presumptively reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991); *see also Schwarzenegger*, 374 F.3d at 802.

Here, ServiceNow relies primarily on the "purposeful direction test" (or the "*Calder* test" from *Calder v. Jones*, 465 U.S. 783 (1984)), which requires that the defendant "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Washington Shoe*, 704 F.3d at 673 (citation omitted). ServiceNow argues that the alleged copyright infringement is just such an intentional act knowingly aimed at it here in California, where it is suffering damages.

It is unclear whether the framework of the "purposeful direction test" is well suited for application here. There is little doubt, however, that Stonebranch has subjected itself to specific jurisdiction in this matter through its conduct. Notwithstanding the two-stages of the merger, Stonebranch in effect knowingly acquired a California company and obtained access to its technology. That technology includes the software in dispute. Stonebranch's primary defense in this action is its claim that it has rights under the license that was assigned to Opswise, when Opswise was a California company. The license agreement is expressly governed by California law.

---

[3] As compared to purposeful direction, a purposeful availment analysis is most often used in suits sounding in contract, rather than tort. *Schwarzenegger*, 374 F.3d 802.

6

Having claimed rights under and through Opswise, acquired when Opswise was a California company dealing with another California company, Stonebridge cannot be heard to say it did not "reasonably anticipate being haled into court" here.  The motion to dismiss must be denied.

B. <u>Preliminary Injunction</u>

Stonebranch effectively concedes, at least for the purposes of this motion, that it is using copyrighted material belonging to ServiceNow in a manner that would constitute actionable infringement, absent a license or waiver.

Stonebranch insists, however, that between March of 2012 and the filing of this suit, ServiceNow never suggested that Stonebranch's use of the Glide platform was unpermitted under the Opswise license assignment.  A ServiceNow investor (John Moores) and a board member (Charles Noell) were in communication with Stonebranch about Glide and never disputed that Stonebranch had the right to use it.  Further communications between ServiceNow and Gwyn Clay of Stonebranch took place in the spring of 2013, again without any claim from ServiceNow that the use was unpermitted.

Stonebranch has not shown, however, how any of these communications could rise to the level of an implied license, or an equitable estoppel to pursue an infringement claim.  Indeed, the evidence shows that ServiceNow in fact told Stonebranch that further sales of Glide should cease, and it should be replaced. Nor is Stonebranch's assertion of an *express* license viable, given the legal dissolution of the entity to which the express license had undisputedly been assigned.

Stonebranch is on more solid ground, however, in arguing that ServiceNow may have been legally obligated to consent to an assignment of the license to Stonebranch, and/or that it has waived any right to withhold that consent.  ServiceNow has complimented Stonebranch's product as a "shining example" of how Glide can be used.  While there is a dispute as to whether it sought only a new license, or was acknowledging an existing one, ServiceNow sought royalty payments, and negotiated for an continuing arrangement between the companies.

Nevertheless, efforts to maintain business relationships and to resolve disputes without court action are to be encouraged, not discouraged.  To hold that ServiceNow is barred from pursuing an

infringement claim now as the result of having made such efforts would not be warranted. The conduct, and the delay in bringing suit, however, does undermine any inference that continued use by Stonebranch of Glide will give rise to any irreparable harm, or any harm not fully compensable in damages.

To obtain a preliminary injunction in a copyright action, a plaintiff may no longer rely on a presumption of irreparable harm, but must instead demonstrate a *likelihood* of such harm. *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc*., 654 F.3d 989, 998 (9th Cir. 2011). The potential harms which ServiceNow contends may occur here are unduly speculative and/or represent little more than argument that certain types of injuries inevitably flow from copyright infringement. As such, ServiceNow has not met its burden. *See*, *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*., __ F.3d __, 2013 WL 6224288, *9 (9th Cir. 2013) ("This approach collapses the likelihood of success and the irreparable harm factors.") ServiceNow has not sufficiently explained how any injury it may suffer cannot be fully compensated through an award of damages. Accordingly, the motion for a preliminary injunction must be denied.

## IV.  CONCLUSION

The motion to dismiss and the motion for preliminary injunction are both denied.

IT IS SO ORDERED.

Dated: 12/20/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE